**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHERESE B.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | Civil Action No. 24-11258 (JXN)<br><br>**OPINION & ORDER** |

**NEALS, District Judge**

Before the Court, pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), is the application of Plaintiff Cherese B.[1] ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security ("Commissioner") denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff has a high school education and some college. (Admin. R. at 48.) She last worked full-time in January 2017 as a cook, described as skilled, medium work. (*Id.* at 29, 49, 51.) In a September 12, 2019 written decision, administrative law judge ("ALJ") Scott Tirrell found Plaintiff not disabled based on an April 2017 application. (*Id.* at 73–86.) Plaintiff did not

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

appeal; instead, in December 2020, she filed for disability insurance benefits ("DIB") and SSI,[2] alleging disability as of September 13, 2019,[3] due to multiple physical and mental impairments. (*Id.* at 284–85, 297–303, 387.)[4] The applications were initially denied (*id.* at 138–47) and on reconsideration (*id.* at 151–58). Plaintiff requested a hearing to review the application *de novo* (*id.* at 160–64), which was held June 7, 2023, and January 8, 2024 (*id.* 37–65) before ALJ Peter R. Lee, who issued a decision on January 31, 2024, denying disability because Plaintiff's residual functional capacity ("RFC") for unskilled light work was compatible with jobs existing in the national economy as recited by the Commissioner's vocational expert. (*Id.* at 14–36). Plaintiff sought Appeals Council review (*id.* at 282–83), but on November 1, 2024, the Appeals Council found no grounds for review (*id.* at 1–6). Thereafter, Plaintiff timely filed this action, which is ripe for determination.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as

---

[2] Since this is a concurrent DIB and SSI claim, and the relevant DIB and SSI regulations cited herein are virtually identical, for convenience, further citations will only be made to the DIB regulations regarding disability evaluation, found at 20 C.F.R. § 404.1501 *et seq*. The parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq*., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

[3] The day after ALJ Tirrell's denial. (*Id.* at 284–85, 297–303.)

[4] Plaintiff reported post-traumatic stress disorder ("PTSD"), anxiety, depression, scoliosis, herniated disc in back, arthritis in knee and right knee problems, and nerve damage in right arm and hand (*Id.* at 387).

follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

Substantial evidence is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *K.K.*, 2018 WL 1509091, at *4 ("[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." (citation omitted)).

Nevertheless, the Third Circuit cautions that substantial evidence is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)); *see Cotter v. Harris* (*Cotter I*), 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record."). Evidence is not substantial if "it is overwhelmed by other evidence," "really

constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Baker v. Colvin*, No. 12-7251, 2014 WL 2652938, at *4 (D.N.J. June 13, 2014) (citing *Schonewolf*, 972 F. Supp. at 284–85).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [their] analysis," the decision must nevertheless contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter I*, 642 F.2d at 705; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence." (internal citation omitted)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris* (*Cotter II*), 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter I*, 642 F.2d at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Schonewolf*, 972 F. Supp. at 284–85 (quoting *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119–20; *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. ex rel. Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22 (citation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B. Sequential Evaluation Process**

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. *Id.* § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's RFC and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 416.920(e)–(f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. DISCUSSION

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 13, 2019, the alleged onset date and the date of the decision. (Admin. R. at 20.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; degenerative joint disease of right knee; depressive disorder; anxiety disorder; posttraumatic stress disorder ("PTSD"); and substance use disorder. (*Id.*) And, the following non-severe impairments, hypertension; hyperlipidemia; mild peripheral artery disease; and obesity. (*Id.*)

At step three, however, the ALJ concluded that Plaintiff had not suffered impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 20–24.)

And at step four, the ALJ determined the following RFC,

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except is able to occasionally climb stairs and ramps; never climb ropes, ladders or scaffold; frequently balance; occasionally kneel, stoop and crouch; and never crawl. [Plaintiff] is able to never be exposed to unprotected heights or hazardous machinery. [Plaintiff] is able to have occasional contact with supervisors, co-workers and the public; and is able to do only simple and routine tasks.

(*Id.* at 24.)

The ALJ found Plaintiff unable to perform any past relevant work. (*Id.* at 29.)[5] At step five and relying on the testimony of the vocational expert, the ALJ found that,

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a mail clerk (DOT # 209.687-026), which is light work, SVP 2; as a photocopy machine

[5] The ALJ stated:

> During the hearing, the vocational expert described the claimant's prior work as a cook (DOT # 313.361-014), which was medium work, SVP 7. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. This job involved greater than light exertional work activity; and greater than simple and routine tasks. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

(*Id.*)

> operator (DOT # 207.685-014), which is light work, SVP 2; and as a merchandise marker (DOT # 209.587-034), which is light work, SVP 2. The vocational expert further testified these jobs existed in numbers in the national economy, 33,000; 19,000; and 185,000, respectively.

(*Id.* at 30.)

The ALJ concluded that Plaintiff's "impairments, singly or in combination, do not meet or equal the regulatory requirements of any listing. I have specifically considered Listings 1.15, 1.16, 1.18." (*Id.* at 21.) The ALJ specifically found,

> Regarding Listing 1.15, disorders of the skeletal spine resulting in compromise of a nerve root(s), the record fails to demonstrate the evidence of a radicular distribution of at least one of the symptoms detailed at section 1.15(A) consistent with the compromise of the affected nerve root(s); radicular distribution of neurological signs present during physical examination or diagnostic testing as discussed at section 1.15(B); findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbar spine; and impairment-related physical limitations of musculoskeletal functional lasting or expected to last for a continuous 12 months and with accompanying documentation regarding documented need for ambulatory devices or inability to use both extremities as outlined at section 1.15(D)1-3.

(*Id.*)

As to the requirements of Listing 1.16, lumbar spinal stenosis resulting in compromise of the cauda equina, the ALJ found,

> The medical record does not satisfy the requirements of Listing 1.16, lumbar spinal stenosis resulting in compromise of the cauda equina. There is no indication of symptoms of neurological comprise outlined at section 1.16(A); nonradicular neurological present during physical examination or on diagnostic testing with evidence as detailed at section 1.16(B); findings on imaging or in operative report consistent with compromise of the cauda equina with lumbar spinal stenosis; and impairment-related physical limitations of musculoskeletal functioning lasting or expected to last for a continuous 12 months and with accompanying documentation regarding ambulatory devices and/or upper extremity use as outlined at section 1.16(D).

(*Id.*)

Finally, as to the requirements of Listing 1.18, the ALJ found,

> The medical record does not satisfy the requirements of Listing 1.18, abnormality of a major joint(s) in any extremity, which requires chronic joint pain or stiffness; abnormal motion, instability, or immobility of the affected joint(s); anatomical abnormality of the affected joint(s) noted on physical examination or imaging; and the impairment-related physical limitations of musculoskeletal functional lasting or expected to last for a continuous 12 months and with accompanying documentation regarding documented need for ambulatory devices or inability to use both extremities as outlined at section 1.18(D)1-3.

(*Id.*)

As to Plaintiff's obesity, the ALJ found that the claimant has not alleged any symptoms or functional limitations because of obesity and the record did not show any examination findings that would support any functional limitations. (*Id.*) Consequently, the ALJ found that the claimant's obesity had not resulted in any significant limitation in the ability to do basic work activities and, therefore, a "non-severe impairment." (*Id.*)

As to the severity of Plaintiff's mental impairments, the ALJ found that such impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." (*Id.* at 22.) The ALJ referenced the paragraph B criteria requirements, whether the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. (*Id.*) An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*) A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*) Applying the criteria, the ALJ found Plaintiff has had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in regard to concentrating, persisting, or maintaining pace; and mild limitation for adapting or managing oneself. (*Id.*)

In support, the ALJ specifically referenced the medication management notes from Telatha Surujnath, APN ("Surujnath"). (*Id.*) On July 2019, September 2019, and January 2020, Surujnath

observed that Plaintiff: was "alert and oriented"; lacked "suicidal ideations or intent"; "denied experiencing any complications" from her medication; had a stable mood and affect; had a fair appetite, but some sleep issues; and denied any hallucinations or delusions. (*Id.*) In May 2020, Plaintiff reported her anxiety increased as she had been taking care of her grandchildren. (*Id.*) Further, clinical notes from July 2020, reflected that Plaintiff was "engaged, effectively using coping skills, and presented overall appropriately"; she "verbalized using skills for boundary setting and making herself a priority"; and her "drug testing had been negative." (*Id.*)

The ALJ also referenced Plaintiff's November 30, 2020 psychiatric evaluation. (*Id.* at 22–23.) The ALJ noted that Plaintiff described having symptoms "including depression, isolation, lack of activities of daily living, anhedonia, anxiety, excessive worrying, racing thoughts, impulsivity, PTSD, insomnia, nightmares, agitation, anger issues and self-medicating." (*Id.* at 22.) The ALJ further noted Plaintiff "gave a history of being physically abused by her mother, ex-husband and husband; had other childhood trauma; had been robbed at gunpoint; and admitted a history of using cannabis." (*Id.*) The ALJ additionally noted that Plaintiff "was cooperative with normal psychomotor activity; oriented to person, place and time; eye contact was good; rapid speech; mood was anxious and depressed; affect was appropriate; no perceptual distortion; logical and normal thought processes; no memory impairment; and impulse control, concentration, insight and judgment were fair." (*Id.* at 22–23.)

The ALJ also noted that on November 30, 2020, Plaintiff's therapist described her as "low risk." (*Id.* at 23.) Though Plaintiff "admitted to multiple external stressors, she remained as a caregiver for her children." (*Id.*) Plaintiff's therapist described Plaintiff as "remaining focused, and motivated for change." (*Id.*)

Further, on March 29, 2021, Plaintiff's therapist stated that Plaintiff "identified depressive

symptoms, short attention span and outbursts at her family." (*Id.*) Nonetheless, Plaintiff was "alert and oriented"; "denied suicidal ideation, hallucinations or paranoid thinking"; had a depressed mood and affect; and "was overall appropriate." (*Id.*) A treatment plan from Plaintiff's therapist dated March 29, 2021, stated that Plaintiff "continued to strive towards overall wellness"; Plaintiff indicated "she had support in place and verbalized measurable goals to work towards"; Plaintiff's therapist observed progress, including Plaintiff "being engaged, effectively using coping skills, and presenting as overall appropriate"; Plaintiff "verbalized using skills for boundary setting and making herself a priority"; and "drug testing had been negative." (*Id.*)

Clinical notes from Plaintiff's therapist dated November 1, 2021, stated that Plaintiff "admitted to constant movement in her household; and daily stressors within organization and behaviors from her children." (*Id.*) Plaintiff's therapist opined that Plaintiff "had shown insight into her behaviors as well as communicating with those around her. She identified having good days and bad days." (*Id.*) Overall, Plaintiff verified "safety" and "using coping mechanisms." (*Id.*) Plaintiff was "alert and oriented"; "denied having suicidal ideation, hallucinations or paranoid thinking"; had an anxious mood and affect; and "was overall appropriate and able to contract for safety." (*Id.*)

In sum, the ALJ concluded that Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, [and] the 'paragraph B' criteria are not satisfied." (*Id.*)

As to the paragraph "C" criteria, the ALJ found,

> [T]he medical evidence of record does not satisfy the "C" criteria because the record is devoid of evidence of a mental disorder that is "serious and persistent" with evidence of medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily

life (see 12.00G2c).

(*Id.*)

The ALJ also noted,

> An overview of the record reveals that [Plaintiff] has had degenerative disc disease; degenerative joint disease of right knee; depressive disorder; anxiety disorder; posttraumatic stress disorder (PTSD); and substance use disorder. Despite these impairments and resulting limitations and restrictions, [Plaintiff] has been capable of performing substantial gainful activity on a sustained basis.

(*Id.* at 24.) As to the referenced impairments, the ALJ noted the peripheral arterial study performed on October 1, 2021, in the bilateral feet was normal. (*Id.* at 26.) Further, a December 17, 2021 echocardiogram was borderline, with normal contractility and borderline valve function. (*Id.*) A Doppler showed normal bilateral carotid flow pattern. (*Id.*) Lower extremity arterial testing on December 17, 2021, showed mild atherosclerotic wall changes, with a biphasic flow pattern. (*Id.*) Testing revealed mild peripheral artery disease in both lower extremities. (*Id.*)

Clinical notes from January 7, 2022, stated that Plaintiff complained of chronic pain in her back and legs. (*Id.*) Plaintiff stated "she was taking Meloxicam for the pain" and "indicated that her blood pressure had been slightly high but was currently better." (*Id.*) Plaintiff's physical examination was normal. (*Id.*) Her lungs were clear, without "adventitious sounds including rhonchi, rales or wheezes." (*Id.*) "There were no abnormalities on percussion." (*Id.*) Plaintiff's "[m]usculoskeletal examination showed no obvious wasting." (*Id.*) At the time, Plaintiff "was alert and oriented to person, place and time." (*Id.*) Her "[n]eurological examination was grossly intact." (*Id.*) She had "no focal deficits on motor or sensory examination." (*Id.*)

In consideration of the medical opinions and prior administrative medical findings, the ALJ provided the following comments.[6] On the initial level, Disability Determination Services

[6] Plaintiff filed her claim after March 27, 2017, accordingly, the revised regulatory framework applied to the ALJ's evaluation of the medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed.

("DDS") consultants opined that Plaintiff "had the ability to perform light exertional work activity, involving no more than standing/walking three hours in an eight hour workday"; Plaintiff "had postural and environmental limitations"; Plaintiff "had no restrictions in regard to understanding and memory and adaption"; Plaintiff "had moderate restrictions in regard to sustained concentration and persistence" and to "social interaction adaption." (*Id.* at 29.) On the reconsideration level, DDS consultants opined that Plaintiff "had the ability to perform light exertional work activity, involving no more than standing/walking four hours in an eight hour workday"; Plaintiff "had postural and environmental limitations"; Plaintiff "had no restrictions in regard to understanding and memory and adaption"; and Plaintiff "had moderate restrictions in regard to sustained concentration and persistence" and to "social interaction adaption." (*Id.*)

The ALJ stated,

> I find these opinions partially persuasive because they are partially supported by and consistent with the medical evidence of record. Their persuasiveness is reduced because while these opinions were rendered by doctors with program knowledge, the consultants did not have the opportunity to examine [Plaintiff] or review the evidence received after their file review was complete. The opinions limiting [Plaintiff] to three or four hours of standing/walking, occasionally balancing, never kneeling and having environmental limitations in regard to temperature extremes/wetness/humidity, are not persuasive. The evidence does not indicate any significant walking or balancing issues; no greater than moderate musculoskeletal issues; and no indication of any impairment that would warrant the above environmental limitations.

(*Id.* at 28–29.)

---

Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01 (Mar. 27, 2017)). An ALJ considers medical opinions when assessing the RFC, but will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ assesses the persuasiveness of medical opinions, and in doing so, need only explain consideration of the "most important" factors of consistency and supportability. 20 C.F.R. § 404.1520c(b)(2)–(3). When doing so, the ALJ "may" comment on other factors, but generally has no obligation to do so absent special circumstances. *Id.* "[S]upportability" is the extent that a medical source presents "relevant objective medical evidence and . . . explanation" that supports the medical opinion; and "consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(1)–(2).

The ALJ further opined,

> Overall, due to degenerative disc disease; degenerative joint disease of right knee; depressive disorder; anxiety disorder; posttraumatic stress disorder (PTSD); and substance use disorder; [Plaintiff] has been capable of performing light exertional work activity, with postural and environmental restrictions. [Plaintiff] is able to have occasional contact with supervisors, coworkers and the public; and is able to do only simple and routine tasks.

(*Id.* at 29.)

Plaintiff asserts that the RFC came in the form of "an announcement," without any actual functional findings or evidentiary rationale in support of those non articulated findings. (Pl. Br. at *7, ECF No. 15.) Plaintiff poses two issues: (1) whether the ALJ sufficiently identified the exertional demands necessary to sustain unskilled light work; and (2) whether the ALJ adequately: defined the elements of unskilled light work, articulated findings consonant with unskilled light work and provided an evidentiary rationale for those articulated unskilled light work components. (*Id.* at *17.)

In support, among other assertions, Plaintiff contends the following: (1) the ALJ simply rejected government doctors who stated that Plaintiff cannot walk and stand long enough to perform light work jobs, leaving the Court with nothing to review, (*id.* at *7); (2) the decisional RFC was not based on substantial evidence, did not consider all of Plaintiff's medically determinable impairments, offered no function-by-function analysis and was presented without evidentiary rationale, and was "vague to the point of incomprehension," (*id.*); (3) the RFC had no rationale, did not account for peripheral artery disease in both legs, ignored Plaintiff's cardiovascular issues entirely and overruled the Commissioner's own medical consultants' RFC, (*id.* at *7–8); (4) the ALJ's decision lacked specific references to record evidence supporting the assessed limitations, (*id.* at *11); and (5) the decision did not make a finding regarding how long Plaintiff can stand and walk or how long/much she can lift and carry in an eight-hour workday,

sustained during a typical forty-hour workweek, (*id.* at *18). Plaintiff argues the ALJ's non-existent explanation for his unarticulated findings is prejudicial error not only because the ALJ ignored the Commissioner's definitions and functional analysis mandates, but also because it is hardly clear that Plaintiff could sustain the standing, walking, lifting and carrying required to fit the unskilled light work exertional category announced in the decisional RFC. (*Id.*)

It is Plaintiff's burden to prove disability. 20 C.F.R. § 404.1512. Plaintiff bears the burden of proof at steps one through four of the sequential evaluation process, including the RFC determination. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020) ("[C]laimant bears the burden of establishing her RFC . . . ."). Plaintiff's description of her symptoms, however, standing alone, is never sufficient to establish an impairment or disability. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("[A]n ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). Despite objective evidence of record that may show a medically determinable impairment, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009); *see also* 20 C.F.R. § 404.1521. Rather, an impairment must be accompanied by functional limitations severe enough to preclude a claimant from working. *See Jones v. Sullivan*, 954 F.2d 125, 128–29 (3d Cir. 1991). An individual is not required to be symptom-free or experiencing no discomfort to perform work. *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

The ALJ specifically referenced Plaintiff's severe impairments (degenerative disc disease; degenerative joint disease of right knee; depressive disorder; anxiety disorder; PTSD; and substance use disorder) and non-severe impairments (hypertension, hyperlipidemia, mild peripheral artery

disease and obesity), but found that they do not meet or equal one of the Commissioner's listed impairments. (*See* Admin R. at 20–24.) The ALJ found that Plaintiff retained the RFC to perform light as defined in 20 C.F.R. § 404.1567(b) except:

> [She] is able to occasionally climb stairs and ramps; never climb ropes, ladders or scaffold; frequently balance; occasionally kneel, stoop and crouch; and never crawl. [Plaintiff] is able to never be exposed to unprotected heights or hazardous machinery. [Plaintiff] is able to have occasional contact with supervisors, co-workers and the public; and is able to do only simple and routine tasks.

(*Id.* at 24.)

After conducting a thorough review of the medical evidence, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (*See, e.g.*, *id*. at 22–27.) As to Plaintiff's mental health limitations, the ALJ concluded that the record did not corroborate Plaintiff's symptoms to the degree of limitation alleged. (*See id.* at 28).

The revised regulations set out a "reasonable articulation" standard for evaluating opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017); 20 C.F.R. § 404.1520c (setting forth articulation process for evaluating evidence). The decision should allow a reviewing court "to trace the path of the adjudicator's reasoning," but need not explain how each piece of evidence was considered. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5858.

The ALJ considered Plaintiff's RFC and her past relevant skilled work and determined that Plaintiff could perform at a medium exertional level, and with the help of the vocational expert ("VE"), found she could not perform her past relevant work but could perform other jobs that exist in significant numbers in the national economy. (Admin. R. at 29–30); *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 97 (3d Cir. 2004) (explaining a VE's testimony constitutes substantial

evidence).

The ALJ's fact-finding is subject to a deferential standard of review. *Biestek*, 587 U.S. at 103. The RFC is an administrative finding, not a medical opinion, which the ALJ formulates exclusively based on the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). To the extent an ALJ finds some of a claimant's limitations unsupported, the ALJ may exclude them from the RFC assessment. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) ("[T]he ALJ need only include in the RFC those limitations which he finds to be credible.").

Moreover, the ALJ is given great discretion in evaluating a claimant's subjective complaints, and his findings are entitled to great deference. *See Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). It is the ALJ who "has seen the hearing up close." *Biestek*, 587 U.S. at 108. Consequently, the ALJ may discount a claimant's subjective complaints that are unsupported by the evidence. *See* 20 C.F.R. § 404.1529(c)(4). So long as substantial evidence supports the ALJ's conclusion, the Court should afford it "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App' x 183, 189 (3d Cir. 2007). The ALJ's credibility determination has thus been described as "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App' x 678, 681 (3d Cir. 2015).

Accordingly, the ALJ's articulation requirements are not onerous. To facilitate substantial evidence review, the Supreme Court provided that an agency's decision need not be "elaborate or even sophisticated." *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 302 (2015). Instead, "a sentence or short paragraph would probably suffice." *Cotter II*, 650 F.2d at 482. Consistent with these principles, the Third Circuit recently held that the ALJ "need not reiterate the magic

words 'support' and 'consistent' for each doctor," and may "weave [their discussion of] supportability and consistency throughout [his or] her analysis." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Moreover, the ALJ need not accept every part of a medical opinion they find "persuasive." *See Irwin v. Comm'r of Soc. Sec.*, No. 19-5108, 2020 WL 1888958 at *3 (E.D. Pa. Apr. 16, 2020) (citing *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)); 20 C.F.R. § 404.1520c(a); *see also Binner v. Kijakazi*, No. 22-122, 2023 WL 35328, at *11 (M.D. Pa. Jan. 4, 2023) ("[S]imply finding an opinion persuasive does not mean that the ALJ must accept the persuasive medical opinion wholesale").

Here, the ALJ's analysis comports with these standards. A review of the ALJ's decision against the record evidence reveals he followed the governing regulations, analyzed the appropriate regulatory factors, and articulated his findings with sufficient clarity to allow for meaningful judicial review. (Admin R. at 17–31.) The ALJ's discussion of the evidence and his findings constituted substantial evidentiary support for the RFC, medical source statements, and the subjective complaint analyses. (*Id.*)

Plaintiff's differing view of the evidence does not mean the ALJ lacked substantial evidence to make his decision. Substantial evidence requires "more than a mere scintilla" of support in the record. *See Biestek*, 587 U.S. at 103; *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."). To override the agency's factual finding, it is not enough that Plaintiff points to evidence that "*supports*" a contrary conclusion: the evidence must "*compel*[]" it. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis original). Plaintiff has not identified any evidence compelling a contrary result. Accordingly, here, remand or reversal

is not warranted.

## IV. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision. The Clerk of Court is hereby directed to **CLOSE** this matter.

**IT IS SO ORDERED.**

**DATED: 8/3/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**